1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
9                                      AT SEATTLE

   JONAS DAVID SMITH,                    )
10                                       )
                     Petitioner,         )     CASE NO.     C06-844-RSL-MJB
11                                       )                  (CR03-370-RSL)
              v.                         )
12                                       )
   UNITED STATES OF AMERICA,             )     REPORT AND RECOMMENDATION
13                                       )
                     Respondent          )
14   _____)

15               INTRODUCTION AND SUMMARY CONCLUSION

16          Jonas David Smith is a former federal prisoner who moves under 28 U.S.C. § 2255 to vacate,

17   set aside, or correct his 2005 conviction and sentence.  Petitioner was confined at the Taft

18   Correctional Institution in Taft, California, at the time he filed his motion, but he was recently

19   released from custody and is now serving his term of supervised release.  In addition to his § 2255

20   motion, petitioner has filed a motion to compel service of documents, a document identified as a

21   "request for rulings," and a document which is identified as an affidavit, but which, in fact, contains a

22   motion for expedited release.  The government has responded to petitioner's § 2255 motion, and to

23   his motion to compel, but has not responded to petitioner's other filings.  The Court will address each

24   of petitioner's filings below.

25

   REPORT AND RECOMMENDATION
26   PAGE - 1

1    The Court, having considered petitioner's § 2255 motion, the government's answer to the

2    petition, petitioner's motion to compel service of documents, petitioner's request for rulings,

3    petitioner's motion for expedited release, and the balance of the record, concludes that petitioner's

4    motions should be denied and that petitioner's request for rulings should be stricken as moot.

5                                    BACKGROUND

6    On August 27, 2003, the grand jury returned an indictment charging petitioner and three

7    others with one count of conspiracy, nine counts of securities fraud, and ten counts of wire fraud.

8    (*See* CR03-370-RSL, Dkt. No. 1.)  Petitioner was arrested on August 28, 2003, and appeared before

9    the Court for the first time on that date.  (*See id.*, Dkt. Nos. 6 and 16.)  Petitioner entered not guilty

10   pleas to the charges and was released on his own recognizance.  (*Id.*, Dkt. No. 6.)  On February 12,

11   2004, the grand jury returned a superseding indictment which added charges for some of the

12   defendants, but which had no substantive effect on the charges brought against petitioner.  (*See id.*,

13   Dkt. No. 33.)  Petitioner was arraigned on the superceding indictment on March 4, 2004, at which

14   time he once again entered not guilty pleas.  (*Id.*, Dkt. No. 40.)

15   On April 28, 2004, petitioner appeared before the Honorable Ricardo S. Martinez, then a

16   United States Magistrate Judge, and entered a guilty plea to the conspiracy charge.  (*Id.*, Dkt. No.

17   55.)  Petitioner entered his guilty plea pursuant to a written plea agreement.  (*Id.*, Dkt. Nos. 55 and

18   56.)  Included in the written plea agreement was an agreement by the government to consider filing a

19   motion for downward departure from the otherwise applicable sentencing guideline range pursuant to

20   USSG § 5K1.1 in exchange for petitioner's cooperation with law enforcement authorities.  (*Id.*, Dkt.

21   No. 56 at 11-12.)

22   On May 13, 2004,  the Honorable Robert S. Lasnik, Chief United States District Judge, issued

23   an order accepting the guilty plea.  (*Id.*, Dkt. No. 58.)  Petitioner was originally scheduled to be

24   sentenced by Chief Judge Lasnik on July 30, 2004.  (*Id.*, Dkt. No. 55.)  However, because of the

25

26   REPORT AND RECOMMENDATION
     PAGE - 2

1   government's need for petitioner's continuing cooperation, his sentencing hearing was continued

2   numerous times.

3       After petitioner pleaded guilty, but before he was sentenced, the United States Supreme Court

4   issued its decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543

5   U.S. 220 (2005).  In an effort to address some of the sentencing uncertainties created by these

6   decisions, the parties engaged in further negotiations and reached a new agreement with respect to

7   sentencing.  (CR03-370-RSL, Dkt. No. 147 at 2-3.)  This agreement was memorialized in a

8   superseding plea agreement which was executed by the parties on June 1, 2005.  (*Id*., Dkt. No. 112.)

9   The superseding plea agreement contained an agreement under Fed. R. Crim. P. 11(c)(1)(C) that a

10  sentencing range of 10 to 30 months was appropriate.  (*See id*, Dkt. No. 112 at 10.)  The sentencing

11  range agreed to by the parties incorporated the cooperation that petitioner had already provided to

12  the government.  (*Id*., Dkt. No. 147 at 3.)

13      On June 1, 2005, petitioner appeared before Chief Judge Lasnik and entered a guilty plea

14  pursuant to the superseding plea agreement.  (*Id*., Dkt. No. 111.)  On June 17, 2005, petitioner

15  appeared before Chief Judge Lasnik for sentencing.  (*See id*., Dkt. No. 126.)  The Court granted the

16  government's motion for downward departure pursuant to U.S.S.G. § 5K1.1, and sentenced

17  petitioner to a term of 18 months confinement.  (*See id*., Dkt. Nos. 126, 127, and 151.)  The Court

18  also imposed a three year term of supervised release.  (*See id*.)

19      Petitioner filed his § 2255 motion on June 16, 2006.  (Dkt. No. 1.)  The action was thereafter

20  referred to the undersigned.  (Dkt. No. 6.)  On June 30, 2006, the undersigned issued an Order

21  directing that petitioner's motion be served on the United States Attorney, and directing that the

22  United States file an answer to the motion.  (Dkt. No. 8.)

23      On July 21, 2006, petitioner filed an objection to this Court's Order directing service.  (Dtk.

24  No. 12.)  Specifically, petitioner objected to the contents of paragraph three of that Order which

25

26  REPORT AND RECOMMENDATION
    PAGE - 3

1   provided that the government's answer would be treated in accordance with Local Rule 7 and should

2   therefore be noted on the Court's calendar for the fourth Friday after filing. (Dkt. No. 12.) Petitioner

3   argued that this directive did not comply with the protocol set forth in Rule 5 of the Rules Governing

4   Section 2255 Proceedings, and he asked that Chief Judge Lasnik set aside that paragraph. (*Id*.) It

5   does not appear that petitioner's objection has been ruled on. However, the briefing is now complete

6   in this matter and petitioner's objection therefore appears to be moot.

7          Petitioner next filed a motion to compel service of documents by the government. (Dkt. No.

8   16.) Petitioner asserts therein that he did not receive a copy of the notice of related cases filed by the

9   government on July 3, 2006. (*Id*.) That notice advised that one of petitioner's co-defendants, Terry

10  Martin, also had an action pending in this Court. (Dkt. No. 9.) Petitioner, in his motion to compel,

11  requests that the government be required to serve him with a copy of the notice of related cases as

12  well as copies of the entire file in Terry Martin's § 2255 proceedings and the pre-existing record in

13  Martin's underlying criminal proceedings. (*Id*.)

14         The government filed its answer to petitioner's § 2255 motion on September 5, 2006. (Dkt.

15  No. 18.) On September 22, 2006, petitioner filed a document entitled "Request for Rulings." (Dkt.

16  No. 20.) In that document, petitioner requests that Judge Lasnik rule on his objection to this Court's

17  service order and that this Court issue a ruling on his motion to compel and that it continue the due

18  date for his response to respondent's answer. (*Id*.)

19         On October 20, 2006, petitioner filed an affidavit which contained a motion for expedited

20  release. (Dkt. No. 21.) In his motion for expedited release, petitioner argues that he is entitled to

21  reversal of his conviction and immediate release from custody or supervised release because the Court

22  never had jurisdiction over him. (*Id*.)

23         Petitioner's § 2255 motion, as well as his other pending motions, are now ripe for review.

24

25
    REPORT AND RECOMMENDATION
26  PAGE - 4

GROUNDS FOR RELIEF

Petitioner identifies three grounds for relief in his § 2255 motion.  He sets forth those grounds as follows:

> GROUND ONE:  Breach of plea agreement by the government by failing to give Mr. Smith a final judgment and by conducting illegal prosecution after sentencing.
>
> GROUND TWO:  The gov't [sic] breached its 5K1.1 agreement by not arguing for a downward departure of Mr. Smith's supervised release sentence.  It was plain error for the Court to sentence Mr. Smith to the maximum allowable sentence of supervised release in light of Mr. Smith's 5K1.1 agreement.
>
> GROUND THREE:  Three "carve outs" are requested in the current supervised release sentence.

(Dkt. No. 1 at 5-7.)

DISCUSSION

Breach of Plea Agreement

Petitioner asserts in his first ground for relief that the government breached the plea agreement it entered into with petitioner when the Securities and Exchange Commission ("SEC") continued to pursue a civil action against petitioner after he was sentenced in his criminal case.  Petitioner asserts in his second ground for relief that the government breached its agreement to seek a departure under USSG 5K1.1 when it failed to argue for a downward departure in petitioner's supervised release sentence.  The record does not support either assertion.

**1.     *SEC Enforcement Action***

On August 28, 2003, the same date petitioner was arrested on his criminal charges, the SEC filed a civil enforcement action against petitioner and others, including all of petitioner's co-defendants in his criminal case.  (*See* C03-2646-JCC, Dkt. No. 1.)  On November 14, 2003, petitioner and his three co-defendants in the criminal action moved to stay the civil action pending resolution of the criminal prosecution (*Id.*, Dkt. No. 21.)  That motion was granted by the Court, the Honorable John C. Coughenour.  (*Id.*, Dkt. No 23.)  On March 3, 2005, Judge Coughenour issued a second

REPORT AND RECOMMENDATION
PAGE - 5

order staying the civil action pending petitioner's sentencing on June 17, 2005.  (C03-2646, Dkt. No. 72.)  The SEC has moved to have the civil enforcement action re-opened now that the criminal proceedings have concluded.  (*See id.*, Dkt. Nos. 74 and 82.)  However, to date, that action has not been reinstated as petitioner is currently prosecuting an appeal on the issue of whether the enforcement action should remain stayed pursuant to 11 U.S.C. § 362 as a consequence of petitioner's Chapter 13 bankruptcy proceedings.  (*See id.*, Dkt. Nos. 85 and 89.)

In his memorandum in support of his § 2255 motion, petitioner argues extensively about issues concerning the propriety of actions taken by counsel for the SEC in the pending civil enforcement action, and the adequacy of the law library at his place of incarceration.  Petitioner appears to be of the belief that these issues are somehow relevant to his claim that the SEC's continued prosecution of the civil enforcement action constitutes a breach of the superseding plea agreement.  In this Court's view, they are not.  Moreover, they are not issues which are properly before this Court.

Section 2255, by its express terms, allows a prisoner to attack his federal sentence only on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.  Petitioner's challenges to the conduct of SEC counsel in a separate proceeding, and to the adequacy of a prison law library, do not fall within the ambit of § 2255.  Thus, this Court will address only the question of whether the continued prosecution of the SEC enforcement action constitutes a breach of the superseding plea agreement entered into between the United States Attorney's Office and petitioner in petitioner's criminal proceedings.  The record makes clear that it does not.

The superseding plea agreement contains the following provision:

> <u>Completeness of Agreement</u>.  The United States and the defendant acknowledge that these terms constitute the entire agreement between the parties.  This agreement only

REPORT AND RECOMMENDATION
PAGE - 6

1    binds the United States Attorney's Office for the Western District of Washington. *It*
2    *does not bind any other United States Attorney's Offices or any other office or*
     *agency of the United States*, or any state or local prosecutor.

3    (CR03-370-RSL, Dkt. No. 112 at 13-14 (emphasis added).)

4         There is no ambiguity in this language as to which parties had agreed to be bound by the

5    superseding plea agreement.  Petitioner attempts to bring the SEC within the scope of the agreement

6    by arguing that the SEC acted in concert with the Department of Justice in the criminal investigation

7    which led to petitioner's conviction.  However, regardless of how the criminal investigation was

8    initiated or conducted, the precise language of the superseding plea agreement binds only the United

9    States Attorney's Office and petitioner.  It specifically excludes any other agency of the United

10   States.  Any actions taken by the SEC following the conclusion of petitioner's criminal proceedings

11   simply have no impact on the validity of his criminal conviction.

12        Furthermore, it is disingenuous for petitioner to now suggest that he understood otherwise at

13   the time he entered his plea.  The record makes clear that all parties were cognizant of the parallel

14   SEC enforcement action and petitioner, through his counsel, had even taken affirmative steps to place

15   those proceedings on hold during the pendency of the criminal proceedings.  In addition, the SEC

16   enforcement proceedings were repeatedly referenced by the parties as the criminal proceedings moved

17   towards sentencing because the existence of the pending civil actions proved to be central to

18   sentencing decisions regarding restitution.

19        The government, in its supplemental sentencing memorandum, urged the Court not to issue a

20   criminal restitution order as such an order would duplicate efforts which were ongoing in two

21   pending civil cases, including the enforcement action filed by the SEC.  (*See id*., Dkt. No. 115 at 10-

22   12.)  Petitioner's counsel, in his supplemental sentencing memorandum, noted with respect to

23   restitution that the amount of loss would likely not be determined until the related civil action was

24   resolved.  (*See id*., Dkt. No. 113 at 30.)  Had petitioner genuinely understood from the

25
     REPORT AND RECOMMENDATION
26   PAGE - 7

1  plea agreement that the SEC would be precluded from pursuing its enforcement action against him

2  once the criminal proceedings were concluded, these memoranda would certainly have alerted him to

3  that misunderstanding and prompted him to raise this issue before now.[1]

4       This Court is satisfied that petitioner understood the terms of the superseding plea agreement

5  and that the SEC's continued efforts to prosecute the civil enforcement action does not constitute a

6  breach of that agreement.  Accordingly, petitioner's § 2255 motion should be denied with respect to

7  his first ground for relief.

8  ***2.       Supervised Release Sentence***

9       Petitioner asserts in his second ground for relief that the government breached the plea

10  agreement when it failed to argue for a downward departure in petitioner's term of supervised

11  release.  He further asserts that the court committed plain error when it failed to apply the USSG

12  5K1.1 downward departure to petitioner's term of supervised release and sentenced petitioner to the

13  maximum three year term.

14       The original plea agreement, entered into by the parties in April 2004, contained a provision

15  stating that the United States Attorney, in exchange for petitioner's cooperation, would agree to

16  consider filing a motion pursuant to USSG § 5K1.1, permitting the Court to sentence petitioner to

17  less than the otherwise applicable guideline range.  (CR03-370-RSL, Dkt. No. 56 at 12.)  In January

18  2005, the government did, in fact, file a motion pursuant to USSG § 5K1.1.  (*See id.*, Dkt. No. 87.)

19

20

21

---

22     [1] Representations made by petitioner in his reply brief further undermine any contention that petitioner misunderstood the terms of the plea agreement.  Petitioner argues therein that the plea

23  agreement should be interpreted according to his reasonable understanding of its terms and that he reasonably understood that he had "neutralized" the SEC and the IRS by filing for bankruptcy

24  protection.  (Dkt. No. 22 at 18-19.)  This explanation suggests to the Court that petitioner was counting on his bankruptcy proceedings to protect him from the SEC enforcement action and not his

25  plea agreement.

REPORT AND RECOMMENDATION

26  PAGE - 8

The superseding plea agreement, entered into by the parties in June 2005, contained a stipulation by the parties to a binding guideline range of 10 to 30 months imprisonment pursuant to Fed. R. Crim. P. 11(c)(1)(C).  As noted above, that negotiated sentencing range was intended to take into account petitioner's cooperation.  At the time of his sentencing, the Court accepted the guideline range agreed upon by the parties, granted the government's motion for downward departure pursuant to USSG § 5K1.1, and imposed a sentence of 18 months.

Nowhere in either the original or the superseding plea agreement does there appear any agreement that the § 5K1.1 departure was to apply to petitioner's term of supervised release as well as to any term of confinement.  And, in fact, the superseding plea agreement, after setting forth the agreement of the parties with respect to the appropriate guideline range, expressly set forth as follows:

> No other agreement has been made with regard to the imposition of the sentence in this matter, and the parties understand that the Court retains full discretion to impose a sentence within the range agreed to above.  Further, the parties understand that the Court retains full discretion with regard to the imposition of a term of supervised release, the conditions of supervised release, fines, forfeitures or restitution as may be applicable.

(CR03-370, Dkt. No. 112 at 11.)

At petitioner's plea hearing on June 1, 2005, the prosecutor reviewed the maximum penalties for the offense, as set forth in the superseding plea agreement, and petitioner acknowledged that he understood those penalties.  (*Id.*, Dkt. No. 147 at 10.)  The penalties recited by the prosecutor included a term of supervised release of up to three years.  (*See id.*)  The Court thereafter specifically reviewed the portion of the plea agreement, set forth above, pertaining to the imposition of supervised release, and petitioner acknowledged his understanding that the Court had full discretion with regard to such matters and that there was nothing in the plea agreement which would bind the Court in this regard.  (*Id.*, Dkt. No. 149 at 4.)

REPORT AND RECOMMENDATION
PAGE - 9

1    The Court was within its discretion to impose a three year term of supervised release, the plea

2    agreement does not reveal any specific agreement on the part of the government to recommend a

3    lower term of supervised release.  And, as noted above, the express terms of the plea agreement

4    authorized the Court to impose any term of supervised release it deemed appropriate.  For these

5    reasons, petitioner's § 2255 motion should be denied with respect to his second ground for relief.

6    *3.      Double Jeopardy*

7    The government, in its response to petitioner's first ground for relief, raises another issue not

8    explicitly raised by petitioner in his motion; *i.e.*, whether the combination of the criminal prosecution

9    and the SEC enforcement action amounted to double jeopardy.  Petitioner, in his reply brief, appears

10   to deny that he intended to raise a double jeopardy claim but then proceeds to argue that the SEC's

11   prosecution of the civil enforcement action after petitioner was sentenced under the terms of the plea

12   agreement violated his right to be free from double jeopardy.  As petitioner has apparently adopted

13   the double jeopardy argument, the Court will address it briefly.

14   The Fifth Amendment to the United States Constitution guarantees that no person shall "be

15   subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend V.  The

16   Double Jeopardy Clause protects against three distinct abuses:  a second prosecution for the same

17   offense after conviction, a second prosecution for the same offense after acquittal, and multiple

18   punishments for the same offense.  *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *North Carolina*

19   *v. Pearce*, 395 U.S. 711, 717 (1969)).  *In rem* civil forfeitures do not constitute "punishment for

20   purposes of the Double Jeopardy Clause."  *United States v. Ursery*, 518 U.S. 267, 275 (1996).

21   However, *in personam* civil penalties such as fines may, in certain circumstances, constitute

22   punishment for purposes of Double Jeopardy analysis.  *See id.*

23   It is unclear whether petitioner might have a viable double jeopardy claim available to him.

24   What is clear, however, is that any such claim is not properly presented in these proceedings.  At this

25

26   REPORT AND RECOMMENDATION
     PAGE - 10

1   juncture, petitioner's criminal judgment is final and only the SEC's civil action remains pending.

2   Thus, any double jeopardy claim which petitioner may intend to raise must be brought in the ongoing

3   civil action.

4                    Requested "Carve Outs" in Supervised Release Term

5          In his third ground for relief, petitioner asks that the court authorize certain "carve outs" in his

6   term of supervised release.  Specifically, petitioner requests that he be allowed until December 4,

7   2006 to report to Syracuse, New York where he will reside during his term of supervised release.  He

8   also requests that he be allowed to go to the Caribbean for up to four weeks in February and March

9   of 2007.  Finally, he requests that he be allowed to travel to a competent law library, to the copy

10  store, and to the post office.  The government correctly points out that these requests are not

11  cognizable in a motion brought pursuant to § 2255 as none of these claims implicates the validity of

12  petitioner's federal sentence.  Accordingly, petitioner's third ground for relief must fail.

13                                Motion to Compel

14         Petitioner, in his motion to compel, requests that the government be directed to provide him

15  with a copy of the notice of related cases filed on July 3, 2006.  (Dkt. No. 16.)  He further requests

16  that the government be directed to provide him with copies of all documents contained in the case file

17  of Terry Martin's § 2255 proceedings and with all documents related to Mr. Martin which are on file

18  in the underlying criminal action.  (*Id*.)  The government has now provided petitioner with a copy of

19  the notice of related cases.  Accordingly, petitioner's motion to compel is moot with respect to that

20  request.  With respect to petitioner's request that the government be required to produce  documents

21  concerning Mr. Martin, petitioner makes no showing that such documents are in any way relevant to

22  these proceedings.  Accordingly, that request should be denied.

23                               Requests for Rulings

24         Petitioner, in his requests for rulings, requests that Chief Judge Lasnik rule on his objection

25

26  REPORT AND RECOMMENDATION
    PAGE - 11

to this Court's service order.  He further requests that the undersigned rule on his motion to compel and that it continue the due date for his response to respondent's answer. (Dkt. No. 20.)  For obvious reasons, this Court cannot rule on petitioner's objection to its order of service.  However, because it appears that the issues raised in petitioner's objection are now moot, the fact that the objection has not yet been ruled on should not preclude the Court from moving forward with final disposition of petitioner's § 2255 motion.

As to petitioner's request for rulings from this Court, petitioner's requests are also moot.  This Court has now made a recommendation with respect to the appropriate disposition of petitioner's motion to compel.  And, while the Court has not expressly ruled on petitioner's request for a continuance, petitioner's response to respondent's answer was filed upon its receipt by the Court on November 2, 2006, and the contents of petitioner's response were considered by the Court in making it recommendation regarding the appropriate disposition of petitioner's § 2255 motion.

<u>Motion for Expedited Release</u>

Petitioner argues in his motion for expedited release that he is entitled to reversal of his conviction and immediate release from custody or from supervised release on the grounds that the Court never had jurisdiction him and that he is entitled to relief as a matter of law.  (*See* Dkt. No. 21.) Petitioner's theory appears to be that he actually committed no crime because Title 18 is invalid. Petitioner's argument is frivolous.

Petitioner was charged and convicted under Title 18.  Title 18 was enacted into positive law by the Congress of the United States on June 25, 1948.  *See* 62 Stat. 683.  When a title of the United States Code has been enacted into positive law, the text of the Code constitutes "legal evidence of the laws." 1 U.S.C. § 204(a); *see United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 n. 3 (1993).  Title 18 is a valid law.  Petitioner offers no persuasive authority to the contrary.  Accordingly, petitioner's motion for expedited release should be denied.

REPORT AND RECOMMENDATION
PAGE - 12

1

<u>CONCLUSION</u>

2        For the reasons set forth above, this Court recommends that petitioner's § 2255 motion,

3  petitioner's motion to compel, and petitioner's motion for expedited release, be denied.  This Court

4  further recommends that petitioner's request for rulings be stricken as moot.  A proposed order

5  accompanies this Report and Recommendation.

6        DATED this 11th day of December, 2006.

7

8

9                    MONICA J. BENTON
                          United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  REPORT AND RECOMMENDATION
     PAGE - 13